470 P.2d 476

Edward J. MOORE, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Western Greyhound Lines, Division of the Greyhound Lines, Inc., Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 305.

Court of Appeals of Arizona,
Division 1,
Department A.

June 11, 1970.

Rehearing Denied July 20, 1970.
Review Denied Oct. 13, 1970.

---

Meadow, Thrasher & Zalut, by R. Y. Thrasher, Phoenix, for petitioner.

Donald L. Cross, Chief Counsel, Phoenix, for respondent Industrial Commission.

Robert K. Park, Chief Counsel, by Cecil A. Edwards, Jr., Phoenix, for respondent carrier State Compensation Fund.

STEVENS, Judge.

The petitioner requests that this Court review the award of The Industrial Commission which denied his petition to reopen. This matter is decided under the law as it existed prior to 1 January 1969.

We are called upon to determine whether pain following a recovery with no physical impairment and with no residual objective signs of injury is compensable where the pain does not interfere with the earning capacity of the injured workman.

The petitioner is a tall man of slight build. Following his graduation from high school, he engaged in several areas of employment requiring some degree of physical strength. For approximately three months prior to 7 January 1967, he was employed in the baggage room of one of the terminals of the respondent employer. In this endeavor he handled items weighing up to an estimated 150 pounds. On 7 January he sustained a sacro-iliac sprain. An award was entered on 10 March 1967 finding an absence of disability resulting from the accident.

Experiencing considerable back pain, the petitioner filed a petition to reopen, filing the same on 15 August 1967. The claim was reopened. The petitioner was hospitalized for a period of time. Doctor Wilard Ergenbright was called on consultation. Dr. Ergenbright's report includes the following:

"The X-Rays were reviewed and revealed a small spina bifida occulta at the posterior segment of S–1 which is of doubtful clinical significance. The disk spaces are well preserved.

\*     \*     \*     \*     \*     \*

"It is my impression that the patient has a recurrent intervertebral disc symdrome (sic). It is related, I believe, to his first attack which occurred in January and noted above. He has never been entirely free of symptoms since that time. It is recommended now that the patient can go to his home when he feels like it and this can be discussed with Dr. Dalton. It is expected, however, that he will have recurrent episodes of a similar nature. His chances are about fifty-fifty that he will be able to continue work with periods of rest with pelvic traction. Pelvic traction could be arranged at his home on a rental basis from one of the Surgical Supply Stores such as Grove's. The more serious attacks may require hospitalization.

"After the patient has been at rest on limited activity at home for another three to four weeks, he could then return to his work with the expectation that he will have future attacks."

On 14 November 1967 the petitioner appeared before and was examined by a consultation board of five doctors including Dr. Dalton, his attending physician.

We quote the "comments" contained in the report of the Board.

"COMMENTS: The patient gives a continuity of symptoms between the injury on January 7, 1967 and today. The patient's build and and general physical condition is not such that he should continue the type of work which he had been doing at the time of injury since he obviously is physically unsuited to such heavy work and if continued, might have repeated low back episodes. In this regard, it is found he is a licensed real estate salesman and has also been involved in one way or another with the electronics industry for a period of years. The patient still has some subjective complaints for which it is suggested that he wear a support for a period of thirty to forty-five days and continue with the exercises which have been prescribed. It is further the opinion of the consultants that he is physically capable of the lighter type of work which he describes as having been engaged in prior to his most recent employment and that he could safely pursue this type of activity."

There was a further award which was entered on 15 January 1968. Finding number five is as follows:

"That said applicant's condition has again become stationary, and he has no

physical or mental disability due to said injury."

■ This award contained a 20-day clause, no action was taken within that period of time, and the award became final.

We now come to the procedures leading up to the award which is before us. The petitioner employed counsel and in mid-February 1968, a "petition and application for readjustment or reopening of claim" was filed. The petitioner was examined by Dr. Alway on 1 May 1968. In his report Dr. Alway stated his impression:

"IMPRESSION: I can find no new or objective medical evidence to support re-opening this man's claim for further treatment as compared with the examination at the Group Consultation held on November 14, 1967. I would feel that the only therapy necessary is what he is already using at home which consists of heat and a vibrator to the low back and on occasion the use of the lumbar orthopedic corset. I feel that he can carry on his work as an office worker but should not engage in any type of work that would entail any bending or heavy lifting." . . .

The reopening was denied, followed by a petition for a hearing. A hearing was held on 27 January 1969. Therein medical evidence was presented that the petitioner sustained no permanent physical impairment as the result of his industrial experience of January 1967. The opinion was also expressed that the petitioner should refrain from bending and lifting. The evidence disclosed that the petitioner continued to sustain pain and used medically prescribed home remedies to relieve the pain. The petitioner testified as to his then current employment, an employment at a higher wage scale than his employment in January 1967. The petitioner testified that portions of the work he could perform with relatively little pain and that portions of the work were quite painful.

On 14 May 1969 the award now in question was entered. The award denied a re-opening and contained a single finding as follows:

"1. Applicant has no new, additional, or previously undiscovered disability attributable to the industrial injury of January 7, 1967."

■ The Workmen's Compensation Act is intended to cover actual loss of earning capacity. There is no provision allowing compensation for pain and suffering. Pain, following a recovery with no physical impairment and residual objective signs of injury, is not compensable where the pain does not interfere with the earning capacity of the injured workman. Egbert v. Industrial Commission of Arizona, 93 Ariz. 33, 378 P.2d 482 (1963); White v. Industrial Commission of Arizona, 87 Ariz. 154, 348 P.2d 922 (1960); Shaw v. Salt River Valley Water Users Ass'n, 69 Ariz. 309, 213 P.2d 378 (1950); 2 Larson, The Law of Workmen's Compensation § 65.20 (1952); 11 Schneider, Schneider's Workmen's Compensation § 2313 (3d ed. 1957).

The award is affirmed.

DONOFRIO, P. J., and CAMERON, J., concur.