475 P.2d 527

**MIDLAND–ROSS CORPORATION,**
Petitioner,

v.

The **INDUSTRIAL COMMISSION** of Arizona, and Leonard Fimbres,
Respondents.

No. 1 CA–IC 446.

Court of Appeals of Arizona,
Division 1,
Department B.

Oct. 14, 1970.

Rehearing Denied Nov. 10, 1970.
Review Granted Dec. 22, 1970.

John S. Schaper, Phoenix, for petitioner.

Meadow, Thrasher & Zalut, by R. Y. Thrasher, Phoenix, for respondent Fimbres.

Donald L. Cross, Chief Counsel, Phoenix, The Industrial Commission of Arizona.

JACOBSON, Judge.

We are asked in this review of an award of the Industrial Commission by the employer to determine whether the Commission correctly determined the claimant's post injury earning capacity.

On December 2, 1965 [1] claimant-employee, LEONARD FIMBRES, suffered an industrially related accident which resulted in his undergoing surgery for a spinal fusion in August, 1966. Following the operation Mr. Fimbres on May 1, 1967, returned to work for the petitioner-employer. MIDLAND-ROSS CORPORATION in his former capacity as a welder. Because of continued back problems which would not allow him to lift any weights, and as a result of a recommendation by his doctor, Mr. Fimbres quit his employment in November, 1967, and sought vocational rehabilitation training.

On October 23, 1967, the Industrial Commission issued its findings and award pending determination of earning capacity, finding that Mr. Fimbres had suffered a ten percent general physical functional disability.

After leaving Midland-Ross's employment, Mr. Fimbres went to the Vocational Rehabilitation Division of the State Department of Public Instruction and through that agency enrolled in Maricopa Technical College, to study radio and television repair. His course of study was continuous up to the time a hearing was held on August 20, 1969, to determine whether Mr. Fimbres was entitled to any benefits for partial permanent disability.

Since Mr. Fimbres terminated his employment with Midland-Ross, he has been attending school with a part-time job as a bartender and as a parts deliveryman for an electronic supply firm. This latter employment was a part of his training as a radio and television repairman obtained through his school.

The August, 1969, hearing resulted in an award by the commission finding Mr. Fimbres was entitled to compensation for his permanent partial disability and a further finding that he had sustained a 52.8 percent reduction in earning capacity and fixed compensation at $185.40 per month, effective as of September, 1967.

■ The employer questions the finding as to the reduction in earning capacity. This attack is twofold. First, the employer contends that since the claimant returned to work as a welder for the same wage he had prior to his injury there was a presumption that his earning capacity did not diminish. Without determining whether such a presumption exists, it is clear from the evidence at the time of hearing that Mr. Fimbres was in constant pain because of the lifting activities required as a welder and in fact was off for thirty days during his post-injury employment because of a strain he suffered while employed by petitioner. His doctor recommended that he quit his employment and seek rehabilitation training. His fellow employees at Midland-Ross also testified as to Mr. Fimbres' inability to adequately do his job as a welder. We find the evidence reasonably supports a finding that he was physically unable because of his industrially related accident to continue his employment as a welder.

■ Second, the employer contends that since Mr. Fimbres voluntarily quit his employment and entered a vocational school, he voluntarily removed himself from the labor market and that therefore his earnings during this period had no relation to his earning capacity. Be this as it may, the employer offered no evidence at the time of the hearing as to the employee's earning capacity. The only evidence presented was that of the employee showing he was earning 52.8% less at that time than he was under his former employment and that he was physically unable to continue his former employment. Under the evidence presented, the Commission could come to no other conclusion than it did.

■ The employer finally contends that the Commission improperly refused a second hearing in order for petitioner to present expert testimony as to Mr. Fimbres' loss of earning capacity. It is clear that the employer was advised that the hearing

1. This case is decided under the law as it existed prior to January 1, 1969.

to be held on August 20, 1969, was for the purpose of determining loss of earning capacity. It is further clear that notice of this hearing was given in sufficient time in advance of the hearing to allow expert testimony to be presented. The employee called all the witnesses that testified at that hearing and the employer called none. At the conclusion of the hearing there was no motion to continue the hearing in order to present additional expert testimony. After the award was entered and was unfavorable to petitioner, the petitioner for the first time requested an additional hearing to present expert testimony. No reason was shown as to why such testimony could not have been obtained at the first hearing.

Under such circumstances, we find the Commission did not abuse its discretion in denying petitioner's application for an additional hearing. *See* Sanchez v. Industrial Commission, 13 Ariz.App. 82, 474 P.2d 441 (filed September 22, 1970).

The award of the Commission is affirmed.

EUBANK, P. J., and HAIRE, J., concur.