616 P.2d 929

Oris E. ALSBROOKS, Petitioner,

v.

The INDUSTRIAL COMMISSION of
Arizona, Respondent,

J. F. Shea Company, Inc., Respondent
Employer,

Argonaut Insurance Company,
Respondent Carrier.

No. 1 CA–IC 2212.

Court of Appeals of Arizona,
Division 1,
Department C.

June 26, 1980.

Rehearing Denied Aug. 27, 1980.

Review Denied Sept. 16, 1980.

Hocker, Yarbrough & Gilcrease by R.
Kelly Hocker, Tempe, for petitioner.

Calvin Harris, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Jennings, Strouss & Salmon by Steven C. Lester, Phoenix, for respondents employer and carrier.

See also, 118 Ariz. 480, 578 P.2d 159,
118 Ariz. 505, 578 P.2d 184.

## OPINION

JACOBSON, Judge.

In this special action review of an Industrial Commission award we are asked to determine whether the hearing officer correctly concluded that claimant sustained no loss of earning capacity as a result of his industrial injury.

On May 25, 1972 petitioner, Oris E. Alsbrooks, suffered an industrial injury to his left knee while employed as a journeyman electrician. Prior to this industrial accident, petitioner had sustained two non-industrial injuries during World War II for which he received a 50% service–connected permanent disability, which was later reduced to 40%. Petitioner's claim was accepted and he received temporary compensation and medical benefits until September 14, 1974 when his treating physician issued a medical report indicating that petitioner was stationary with a 5% permanent impairment of the lower left extremity. The findings of this report apparently have never been controverted or contested. In a prior opinion in this case [1] the Arizona Supreme Court set aside an Industrial Commission award granting petitioner scheduled permanent benefits, and held that his service–related disability operated to convert the present industrial impairment into an unscheduled injury.

Thereafter, the Industrial Commission entered an administrative award which found that petitioner had sustained an unscheduled injury, but concluded that he had suffered no loss of earning capacity as a result of the industrial injury. This award was contested and a hearing was held.

The initial hearings and the hearing *de novo* disclosed the following materially undisputed facts relevant to petitioner's post–injury earning capacity. Petitioner testified that at the time of the injury, he was earning "eight or nine" dollars per hour and was working on a regular basis, with occasional "slack periods" when work was unavailable. He returned to work in May of 1974 and was employed by Bechtel Corporation for a period of six to eight months, first as an electrical foreman and later as a general foreman. Between January 1975 and August 1976, petitioner worked as a journeyman electrician for four different employers, at each job receiving union wage, which on a "roll back" basis equalled his pre–injury wage. During this time span petitioner experienced intermittent periods of unemployment when general work force reductions occurred.

Since August 1976 petitioner has enjoyed largely uninterrupted employment with Bechtel Corporation. He labored as a journeyman electrician on two different projects between August, 1976 and May, 1977 for which he was paid approximately twelve dollars per hour. In May of 1977 petitioner was promoted to foreman at Bechtel's Joseph City project and was paid over thirteen dollars per hour. He was promoted to general foreman in May of 1978 and received an increase in wages to approximately eighteen dollars per hour.[2] Petitioner's gross earnings for the calendar year 1977 were approximately $28,000.

Based on this evidence, the hearing officer concluded that the industrially related 5% permanent impairment of petitioner's left leg resulted in no earning capacity disability. The hearing officer affirmed this award on review and petitioner then brought this special action.

The thrust of petitioner's argument is that although he is presently earning as much or more than he did prior to the accident, he is suffering from a permanent industrially related impairment which will restrict his earning capacity if and when his present employment is terminated. He contends that his present position of foreman is temporary. He further asserts that he is presently unable to perform the majority of tasks required of a typical journeyman electrician and that his future employ-

1. *Alsbrooks v. Industrial Commission*, 118 Ariz. 480, 578 P.2d 159 (1978), *vacating* 118 Ariz. 505, 578 P.2d 184 (App.1977).

2. The post–injury wage rates indicated are adjusted to exclude subsistence allowances of approximately $2.50 per hour.

ability as a journeyman is dependent upon the availability of jobs on large projects which allow for full time positions requiring solely the performance of tasks which he can physically accomplish.

A.R.S. § 23–1044(D) prescribes various factors which are to be given consideration in determining the diminished earning capacity of an industrially impaired worker. These include occupational history, any previous disability, extent of the present physical disability, nature of post–injury employment, age, and post–injury wages. Moreover, Arizona cases have stated repeatedly that post–injury earnings raise a presumption of at least commensurate earning capacity. *Maness v. Industrial Commission*, 102 Ariz. 557, 434 P.2d 643 (1967); *Raban v. Industrial Commission*, 25 Ariz.App. 159, 541 P.2d 950 (1975); *Cier v. Industrial Commission*, 21 Ariz.App. 183, 517 P.2d 1076 (1974); *Cramer v. Industrial Commission*, 19 Ariz.App. 379, 507 P.2d 991 (1973). This presumption may be overcome by evidence that post–injury earnings are not representative of post–injury earning capacity. Such evidence can be presented by showing that a job secured by an injured worker is created by the employer solely out of sympathy, *Yount v. Industrial Commission*, 20 Ariz.App. 527, 514 P.2d 280 (1973), or by demonstrating that the post–injury employment is clearly temporary and that the industrial impairment would restrict subsequent earnings. *See Shroyer v. Industrial Commission*, 98 Ariz. 388, 405 P.2d 875 (1965).

The evidence presented at the hearings here indicates that petitioner has been able to survive, indeed to excel, in his occupation despite his impairment. While petitioner testified that he has had trouble with journeyman electrician duties requiring climbing and extensive stooping, he consistently has been able to secure positions, both as a journeyman and as a foreman, compatible with his abilities. The record here contains no testimony compelling a finding that these positions were created out of sympathy or that they will be unavailable in the future.

Petitioner relies on *Shroyer v. Industrial Commission, supra*. In *Shroyer*, an award finding no earning capacity disability was set aside because the Industrial Commission had relied entirely on post–injury earnings, ignoring proof of the temporary nature of the claimant's post–injury position and ignoring the other factors in A.R.S. § 23–1044(D). Here, however, the hearing officer specifically applied and considered the statutory factors and had no facts before him showing that petitioner's job was about to end.

We conclude that the record supports the hearing officer's finding that petitioner has not sustained a loss of earning capacity attributable to his industrial injury. As we stated in *Raban v. Industrial Commission, supra*:

> When an injured person returns to essentially the same type of work he was doing prior to the injury, has steady employment, and earns at least as much money for his labors, he cannot be heard to complain that his earning capacity has been diminished.

25 Ariz.App. at 161, 541 P.2d at 952.

Of course, if sometime in the future petitioner's earning power is reduced as a result of his industrial impairment, he can petition for rearrangement under A.R.S. § 23–1044(F).

Award affirmed.

CONTRERAS, P. J., and OGG, C. J., concur.