412 P.2d 282

Edward L. COLLINS, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and Greyhound Post Houses, Inc. (Greyhound Post House, Inc.), Respondents.

No. 1 CA–IC 45.

Court of Appeals of Arizona.

March 17, 1966.

Donald J. Morgan, Phoenix, for petitioner.

Robert K. Park, Chief Counsel by Dee-Dee Samet, Phoenix, for respondent Industrial Commission of Arizona.

Jennings, Strouss, Salmon & Trask, by William R. Jones, Jr., Phoenix, for respondent Employer.

DONOFRIO, Judge.

This is a writ of certiorari to review the Findings and Award of The Industrial Commission of Arizona entered on April 28, 1965. This Award affirmed the Award issued on August 4, 1964, which found that petitioner's claim was noncompensable since he did not suffer an injury by accident arising out of and in the course of his employment. The question before us is whether the Award is sustained by the evidence.

The facts necessary to determine this appeal are as follows: Edward L. Collins, petitioner herein, was employed by Greyhound Post House, Inc. at Flagstaff, Arizona, from November 1963 until July 1964. He was employed in the restaurant operation part of the Flagstaff depot as counterman and cashier. The duties involved taking cash, transporting dishes from the counter to the kitchen and bringing food out to the counter which required traveling from thirty to sixty feet on each trip. There was a small elevated platform about one foot high that covered some pipes that the petititioner constantly had to negotiate while performing these duties. Petitioner alleges he acquired a limp which he thought was a pulled muscle, about the middle of December caused by the extra work load and long hours of the Christmas rush. To be specific, petitioner stated he felt the first "twinge" of pain when he was placing a five gallon milk container into the dispenser while standing on the elevated platform. Petitioner's duties were considered ordinary for that particular job and no unusual tasks were performed while employed by the respondent. Although the evidence is not completely unambiguous, apparently petitioner did not limp prior to the middle of December 1963.

Petitioner's condition continued to get worse. He was treated by chiropractic adjustments to his back during January and February of 1964. The injury was diagnosed by one chiropractor as a strain of the right hip joint, with a spasm of adductor muscles of the thigh due to strain of walking or lifting the leg and overuse and extraordinary movement of the hip joint. The other chiropractor diagnosed the condition as a moderately severe right lumbar scoliosis or, in layman's terms, a curvature of the lower spine.

These treatments proved unsuccessful and in July 1964 at the request of the Industrial Commission of Arizona, petitioner was examined by Dr. Howard P. Aidem, a practicing orthopedic surgeon in Phoenix, Arizona. Dr. Aidem diagnosed petitioner's condition as degenerative joint disease of the right hip. Dr. Aidem was of the opinion that the degenerative joint disease was not of recent onset but was a condition that had developed over a long period of time. X-rays were taken which showed that the condition had been there for some time prior to the incidents of his work in December 1963.

■ In deciding the question of whether the Commission's Award is reasonably supported by the evidence we must consider the evidence adduced in a light most favorable to sustaining the Award. Wilson v. Wilson, 1 Ariz.App. 77, 399 P.2d 698 (1965); Donaldson v. Industrial Commission, 2 Ariz.App. 172, 407 P.2d 111 (1965).

Dr. Aidem, a qualified orthopedic specialist, correctly diagnosed petitioner's condition. Dr. Aidem testified:

"* * * I was asked about the relation of the patient's symptoms and findings to the activities which were reported to me in more detail, and I was asked to comment upon the causal relationship to his activities and the disability for which I examined him.

I think my conclusions were the same, that despite any particular type of activity, I could not establish a causal re-

lationship between the activities he pursued and the complaints and physical findings, despite the fact that he stated again that they were not present prior to December of '63."

Dr. Aidem testified further that he thought he

"* * * could have picked this up before his symptoms, had he examined him then. I think it was just a matter of it becoming symptomatic at that time."

* * * * * *

"The main thing to me is that there is a difference between a causal relationship, between his activities and the hip joint disease, which I think is unreasonable, and yet I think there is a relationship between certain activities and the production of symptoms in the affected hip.

I think you have to differentiate. I don't believe that any activities produced this hip joint disease, but sooner or later these things become symptomatic, and I think there is a possible relationship between activities and symptoms, but not between the underlying disease."

* * * * * *

"I don't think that the muscle strain is the factor here. I think that the patient began having symptoms referable to activities, which I think might have occurred with time, no matter what he was doing unless he was at complete bedrest."

■ It is our conclusion that this testimony does not show a causal connection between the activities and the condition of the petitioner. We are mindful of our decision in International Metal Prod. Div. v. Industrial Commission, 2 Ariz.App. 399, 409 P.2d 319 (1965) wherein we stated that the employer must take his employees as he finds them, there must be a causal connection between the work and the injury, and the work itself cannot be merely a setting for the injury. Thiel v. Industrial Commission, 1 Ariz.App. 445, 404 P.2d 711 (1965).

In Thiel (supra) we stated that the burden of proof to establish a compensable claim is upon the petitioner. He must prove the causal connection between the employment and the accidental injury that brings about the disability. As applied to this case petitioner must prove that the extra work, long hours, and the lifting of the milk container into the dispenser while standing on the elevated platform caused the petitioner's degenerative hip joint disease to become symptomatic sooner than it otherwise would have become symptomatic if left to its normal course.

The Supreme Court in Schreven v. Industrial Commission, 96 Ariz. 143, 393 P.2d 150 (1964) had before it a case similar to the one at bar wherein they stated:

" * * * that the injury did not medically cause the spinal condition but that it did bring on the symptoms earlier than would have been anticipated. Therefore, legally, the injury was the proximate cause of the disability."

It is noted that in the Schreven case the doctor did state unequivocably that the injury "triggered" the petitioner's condition even though it would have eventually occurred because of the congenital abnormality. In the instant case the strongest testimony of Dr. Aidem indicates that although extraordinary stress and strain that causes muscle spasms can trigger or aggravate a condition such as the petitioner has, he can find no such causal connection in this case.

Although we are of the opinion that activities over a period of time can equal an accident, Reilly v. Industrial Commission, 1 Ariz.App. 12, 398 P.2d 920 (1965), we are also mindful of our case of Roberts v. Industrial Commission, 1 Ariz.App. 449, 404 P.2d 715 (1965) wherein we stated that the "Christmas rush" is a normal and usual experience and not an unusual condition as existed in Reilly.

We have examined the record and it is our opinion that the evidence sustains the Findings and Award of the Industrial Commission that the petitioner did not suffer an injury by accident arising out of and in the course of employment.

STEVENS, C. J., and CAMERON, J., concurring.